# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS F. ("TIM") FODOR, | 3:10-CV-0798-RCJ (VPC) |
| Plaintiffs, | |
| vs. | **ORDER** |
| JOHN DOE, et al., | |
| Defendants. | |

Before the court are two motions: plaintiff's motion for leave to conduct third-party discovery (#8) and plaintiff's motion to extend time to effect service of process and to serve the amended complaint and summons by alternative means (#13). Defendants are identified as: (1) John Doe a.k.a. Tazmanian353 a.k.a. Taz ("Tazmanian"), whose identity is not verified; (2) Phillip Maurice Hicks a.k.a. Marty Hicks a.k.a. Tazmanian353 a.k.a. Taz ("Mr. Hicks"); (3) Does II through XX; and (4) Black and White entities I through XX (#7). None of the defendants has been served with the amended complaint or the present motions, as more fully explained below.

## I.    History and Procedural Background

Plaintiff is an oil and gas exploration geologist, and he must raise capital to fund his work of exploring undiscovered oil and gas reserves (#7). Plaintiff alleges that his reputation in the oil and gas industry for honesty and integrity is essential to maintaining important financial relationships and his success in obtaining funding for exploration. *Id.* Plaintiff alleges that he recently became aware of a blog posting on the Internet dated December 23, 2008, posted on Blogspot.com by an individual known only as Tazmanian, which states:

> Tuesday, December 23, 2008
>
> Paul Staub Jr.
>
> Looking for comments back from others that have been scammed by Paul Staub, Jr. He came looking for investors in oil exploration projects with

> Tim Fodor of Nevada.  We later learned that Paul Staub, Jr. has been charged with 5 serious crimes in Pennsylvania and his trial date is February 19, 2009.  It is plastered in all the local news in the Pittsburgh area if you simply Google his name.  Paul made his situation much worse for himself by using investor money in shallow attempts to cover up his crimes.  Luckily he got caught but not until a lot of money was stolen and time wasted.  Thomas F. Fodor (Tim Fodor) has been involved from the beginning by aiding Paul Staub, Jr. thus perpetuating the fraud.  We have been told that Tim Fodor is related to Paul Staub and we are trying to find out those details as well.  If you approached by Paul Staub, please remember that he is the con of con artists and is an attorney, at least for now.  Any information you have on these individuals would be greatly appreciated.
>
> Posted by Tazmanian at 4:42 AM 4 comments
>
> Labels: The Crime

*Id.*, Exhibit 1.  The blog is posted on Blogspot.com, which is owned by Google, Inc. (#8, Exh. 1).  Plaintiff asserts that Tazmanian's blog not only implicates Paul Staub, Jr. ("Mr. Staub") in criminal activity to defraud investors, but also identifies plaintiff as a criminal aider and abetter in the alleged criminal fraud. (#7).  The offending blog posting is published in a medium accessed by billions of Internet users daily, and it remains the first listed item of results when one searches plaintiff's name on Google's search engine.  *Id.*

It is Tazmanian's blog posting, falsely accusing plaintiff of criminal and dishonest activity, which precipitated this lawsuit.  Plaintiff's amended complaint contains four claims for relief: (1) gross negligence; (2) defamation *per se*; (3) intentional interference with prospective advantage; and (4) preliminary and injunctive relief.  *Id.*  Jurisdiction of this matter is based on diversity, as plaintiff is a resident of Nevada, and he alleges on information and belief that Tazmanian and Mr. Hicks may be one-in-the-same-person, and that Mr. Hicks resides in South Carolina.  *Id.*

Because the allegedly defamatory message is posted anonymously, there is no means for plaintiff to obtain information about the true identity of the individual who authored and published the posting.  The only reference is to Tazmanian.  *Id.*  As noted, Blogspot is controlled by Google, Inc. ("Google"), but according to plaintiff, Google is unable or unwilling to disclose Tazmanian's identity or remove the offensive blog (#8, Exhs. 1 & 2).

2

Plaintiff also sought to confirm the identity of Tazmanian through Mr. Hicks, who may be one-in-the-same person as Tazmanian (#8). Plaintiff's counsel in this action sent letters to Mr. Hicks to two different addresses in South Carolina that plaintiff obtained through the Internet (#8, Exh. 3). The letter sent to the Mt. Pleasant, South Carolina address was returned as undeliverable, and the letter sent to the Daniel Island, South Carolina address was not returned, and there was no response (#8, Exh. 4). Jackson Bucher ("Mr. Bucher"), a process server in South Carolina, attests that the Daniel Island, South Carolina address is a private post office box, and not a physical address of an actual business (#8, Decl. of Jackson Bucher, Exh. 5).

Mr. Bucher further attests that plaintiff's Pennsylvania attorney, Mr. Knestrick, wrote to Mr. Hicks about the blog posting at yet another residence on Daniel Island, South Carolina, but there was no response. *Id.* Mr. Knestrick then retained Mr. Bucher to deliver the letter to Mr. Hicks at an address in Mt. Pleasant, South Carolina, as Mr. Bucher had information that Mr. Hicks may actually reside at that address. However, Mr. Bucher was unable to deliver the letter at the residence, although it appeared that someone was in the residence at the time he attempted service. *Id.*

As further support for plaintiff's motion, plaintiff contends that Mr. Hicks evaded service of process in another civil matter pending against Mr. Hicks in South Carolina in which Mr. Hicks and Tazmanian are target defendants. (#8, Exh. 8). The plaintiff in that state court action alleges that Tazmanian posted libelous or disparaging material about the plaintiff and its principals on Internet blogs. *Id.* Mr. Bucher unsuccessfully attempted service of the summons and complaint on Mr. Hicks at the Mt. Pleasant residence where he attempted to deliver Mr. Knestrick's letter earlier, but an officer with the local sheriff's office successfully served Mr. Hicks thereafter (#8, Exh. 5). In answering the other civil complaint, Mr. Hicks neither admits or denies his identity as Tazmanian (#8, Exh. 9). Mr. Hicks failed to appear for his deposition in that case, so the issue of Mr. Hicks's association with Tazmanian in that action is still undetermined (#8, Exh. 7).

Just as Mr. Hicks evaded service of process in other civil actions, he has done so in this matter (#8, Exh. 5). Mr. Bucher attempted to serve Mr. Hicks at a location where Mr. Hicks is believed to conduct business, but Mr. Hicks retreated to his car when he saw Mr. Bucher approaching him. *Id.*

To date, plaintiff's two attorneys have attempted to correspond with Mr. Hicks without success, and attempts to serve the summons and complaint in this action have been unsuccessful. Plaintiff seeks leave of court to conduct third-party discovery through Rules 30(b)(6) and 45 of the Federal Rules of Civil Procedure to take depositions and have subpoenas issued for the following entities: (1) Google, Inc. and/or Blogspot.com; (2) Yahoo!, Inc. and/or Yahoo! Finance; (3) Interactive Data Corporation ("IDC") and/or RagingBull.com; and (4) potentially other host/ISP sources to identify Tazmanian353. Plaintiff identifies Yahoo!, Yahoo! Finance, IDP, and RagingBull.com because Tazmanian's postings are located on these sites in the South Carolina litigation. Plaintiff believes that these entities also maintain registration information on Tazmanian sufficient to identify the individual. Plaintiff proposes to begin third-party discovery with Google, Inc., and then proceed with discovery in the order listed above if his efforts to identify Tazmanian are unsuccessful. Plaintiff asks the court to allow third-party discovery of other unnamed host/ISP sources should third-party discovery from Google, Inc., Yahoo!, and IDC be insufficient to identify Tazmanian. Finally, plaintiff identifies seven categories of documents and subjects for deposition testimony of the third parties should the court grant plaintiff's motion. *(#8, pp. 20-21).*

## II. Discussion and Analysis

"Although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." *In re Anonymous Online Speakers v. U.S. Dist. Court for the Dist. of Nevada,* No. 09-71265, 2011 WL 61635, at *2 (9th Cir. Jan. 7, 2011) quoting *Reno v. Am. Civil. Liberties Union,* 521 U.S. 844, 870 (1997). The court must weigh the rights of the harmed party to expose an anonymous online speaker against the anonymous speaker's First Amendment right of free speech. *In re Anonymous Online Speakers,* 2011 WL 61635, at *6. The district court "has wide latitude in controlling discovery," and such decisions are extremely fact intensive. *Id.* citing *White v. City of San Diego,* 605 F.2d 455, 461 (9th Cir. 1979). There are four different standards courts use in online defamation cases: (1) the motion to dismiss or the good faith standard, *Columbia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573 (N.D.Cal 1999); *In re Subpoena Duces Tecom to AOL, LLC,* 550 F.

4

1  Supp. 2d 606 (E.D. Va. 2008); (2) the prima facie standard, *Highfields Capital Mgmt., LP v. Doe.,* 385
2  F. Supp. 2d 969 (N.D. Cal 2005); (3) somewhere between the good faith and prima facie standards, *Doe*
3  *v. 2TheMart.com,* 140 F. Supp. 2d 1088 (W.D. Wash. 2001); and (4) the summary judgment standard,
4  *Doe v. Cahill, 884* A.2d 451 (Del. 2005).  Each of these standards share one common principle – "the
5  initial burden rests on the party seeking discovery and requires varying degrees of proof of the
6  underlying claim." *In re Anonymous Online Speakers,* 2011 WL 61635 at *6.  Although the Ninth
7  Circuit examined these four approaches to anonymous online speech, it did not adopt a single standard
8  to guide lower courts.  *Id.*  Therefore, this court has considered the various approaches to this unique
9  issue and the specific facts of this case, and concludes that the prima facie standard outlined in
10 *Highfields Capital* is appropriate in this instance. *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 969.

11       In *Highfields Capital,* the court created a two-part test to determine whether a private plaintiff
12 should be able to seek the identity of an anonymous Internet speaker. *Id.* at 975-76.  First, the court must
13 consider whether there is a real evidentiary basis to believe the defendant has engaged in wrongful
14 conduct that has harmed the plaintiff as alleged in the complaint.  *Id.*  If plaintiff satisfies this first step,
15 the court must weigh the harm caused by the competing interests by a ruling in favor of either party.  *Id*.

16       Of plaintiff's four claims alleged in his complaint, the court finds that he makes out a prima facie
17 claim for defamation *per se.*  The elements of defamation are: "(1) a false and defamatory statement . .
18 .; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4)
19 actual or presumed damages." *Clark County School Dist. v. Virtual Educ. Software, Inc.,* 213 P.3d 496,
20 503 (Nev. 2009) (internal citations omitted).  If a defamatory communication imputes "a person's lack
21 of fitness for trade, business or profession," or tends to injure the plaintiff in his or her business, it is
22 deemed defamation *per se* and damages are presumed."  *Id. (*quoting *K-Mart Corporation v.*
23 *Washington,* 866 P.2d 274, 282 (Nev. 1993)).

24       Plaintiff satisfies the first element because he alleges that the statements made on the blog
25 posting are false because the publication links plaintiff to aiding another to perpetrate serious crimes of
26 dishonesty, to steal money, the defraud investors, and implies that plaintiff is one of the targets of a
27 criminal investigation (#7, ¶¶ 18, 21, 23, 31 & 46, and Exh. 1).  Plaintiff has satisfied the requirement
28

5

for his claim of defamation *per se* for which damages are presumed because the blog posting targets plaintiff personally and infers that he had "been involved from the beginning by aiding Paul Staub, Jr. thus perpetuating the fraud." *Id.* at Exh. 1. Throughout the posting, the author infers that plaintiff maintained a criminal association with Mr. Staub to defraud investors. *Id.* Plaintiff concedes that Tazmanian's blog posting does not denigrate plaintiff's work in oil and gas exploration; rather, the statements impugn plaintiff's integrity, character, honesty by implicating him in a criminal scheme to defraud investors interested in investing in oil and gas exploratory efforts. The implicit message of the blog posting is that given plaintiff's alleged connection to Mr. Staub and the criminal activities alleged, investors should exercise caution and not invest in plaintiff's exploratory efforts in oil and gas.

The second element is satisfied because blog postings are not privileged, and blogs posted on the Internet are potentially published to billions or more users daily. *Id.* ¶¶ 24, 38 & 46. Plaintiff identifies how Tazmanian's statement is published to third persons. *Id.* ¶¶ 20,22, 26, 27, 41,& 49. In addition, plaintiff alleges that the blog posting at issue is the very first search result that comes up in a Google search of his name. *Id.* ¶¶ 19 & 45.[1] Plaintiff satisfies the third element of fault, at least amounting to negligence, which is a separate claim for relief. *Id.* ¶¶ 16-36.

Having concluded that the plaintiff has established a valid evidentiary basis for believing that Tazmanian's blog posting caused real harm to plaintiff and constitutes defamation *per se,* the court must next weigh the parties' competing interests to decide whether the extent of the harm to defendant's First Amendment rights and privacy issues are justified by the plaintiff's request for third-party discovery to enable him to identify Tazmanian and proceed with the case. *Highfields Capital*, 385 F. Supp. 2d at 976.

Unlike the anonymous defendant in *Highfields Capital* who engaged in online speech the court characterized as "clearly sardonic opinion or parody, not to be taken seriously by anyone," *Id.* at 979, Tazmanian's blog posting links plaintiff to a person charged with "five serious crimes" who used "investor money in shallow attempts to cover up his crimes," and characterizes plaintiff as someone who "has been involved in the beginning by aiding [Mr. Staub], thus perpetuating the fraud" (#7, Exh. 1).

---

[1] The court Googled plaintiff's name, and it is correct that Tazmanian's blog posting is the first search result that appears.

6

These statements are defamatory *per se*, and it is reasonable for the reader to conclude that plaintiff is unworthy of investors' trust or their money. Taken in context, the statements are likely to be taken seriously, and there is potential that the statements would come to the attention of potential investors, particularly since it is the first entry in an Internet search of plaintiff's name. There is no compelling public interest in protecting anonymous speech of this character.

Conversely, plaintiff has demonstrated how this blog posting has the potential to harm his work as an oil and gas exploration geologist whose reputation for honesty and integrity is pivotal to his ability to attract investors to fund his work. There is a genuine risk that as a consequence of Tazmanian's blog posting, plaintiff faces the prospect of losing investors who might otherwise invest in his exploration work. Considered in this context, the court concludes that the balance tips in favor of allowing plaintiff limited third-party discovery so that he might learn Tazmanian's identity and whether Mr. Hicks and Tazamanian are one-in-the-same person.

The court now turns to plaintiff's request that he be allowed to take third-party discovery of not only Blogspot.com and Google, Inc. which control the blog site, but also Yahoo!, Yahoo! Finance, IDT, and RagingBull.com. The court is unwilling to cast such a broad net of discovery over entities that have no connection to this proceeding, and are simply other sites on which Tazmanian appears. The court will allow plaintiff to take third-party discovery of Google, Inc. and/or Blogspot.com pursuant to Fed.R.Civ.P. 30(b)(6) and 45 of corporate representatives of those entities through deposition and production of documents as to the following:

1. Registration information for Tazmanian353, including but not limited to name, address, telephone, fax, email and other contact information of Tazmanian353, in possession of, or under control of Google, Inc., and/or Blogspot.com.

2. Assignment, billing and payment information for Tazmanian353 (but excluding credit/debit card number, expiration date and security number information, and excluding banking information, and Social Security number) in possession of, or under control of Google, Inc. and/or Blogspot.com.

3. Source IP addresses information for Tazmanian353, in possession of, or under control of Google, Inc. and/or Blogspot.com.

4. Log files noting dates and times of activity by Tazmanian353, and to whom the IP address for Tazmanian353 purportedly belongs, in possession of, or under control of Google, Inc. and/or Blogspot.com.

5. Other source IP addresses through which Tazmanian353 has registered or used, or with which he/she signed-on, when posting or gaining access to Google, Inc. and/or Blogspot.com.

6. IP addresses for Tazmanian353 that Google, Inc. and/or Blogspot.com have assigned to others.

Plaintiff's request to take the deposition of an unidentified individual currently residing in Ohio is denied.

Plaintiff shall file a third-party discovery status report with this court on or before by **Monday, June 13, 2011**, to report on the status of this limited discovery.

Plaintiff's motion to extend time to effect service of process and to serve the amended complaint by alternative means (#13) is **GRANTED**. Plaintiff shall have to and including **Wednesday, July 20, 2011** to properly effectuate service. Alternative methods of service of process will be allowed, should such alternative means be necessary and if available in accordance with the law of the State of South Carolina (or wherever Mr. Hicks is next found) for effective service of process. Fed.R.Civ.P. 4(e)(1).

### III. Conclusion

Based on the foregoing, and for good cause appearing, plaintiff's motion for leave to conduct third-party discovery (#8) is **GRANTED in part** and **DENIED in part** as follows:

A. The court will allow plaintiff to take third-party discovery of Google, Inc. and/or Blogspot.com pursuant to Fed.R.Civ.P. 30(b)(6) and 45 of corporate representatives of those entities through deposition and production of documents as to the following:

1. Registration information for Tazmanian353, including but not limited to name, address, telephone, fax, email and other contact information of Tazmanian353, in possession of, or under control of Google, Inc., and/or Blogspot.com.

2. Assignment, billing and payment information for Tazmanian353 (but excluding credit/debit card number, expiration date and security number information, and excluding banking information, and Social Security number) in possession of, or under control of Google, Inc. and/or Blogspot.com.

       3.     Source IP addresses information for Tazmanian353, in possession of, or under control of Google, Inc. and/or Blogspot.com.

       4.     Log files noting dates and times of activity by Tazmanian353, and to whom the IP address for Tazmanian353 purportedly belongs, in possession of, or under control of Google, Inc. and/or Blogspot.com.

       5.     Other source IP addresses through which Tazmanian353 has registered or used, or with which he/she signed-on, when posting or gaining access to Google, Inc. and/or Blogspot.com.

       6.     IP addresses for Tazmanian353 that Google, Inc. and/or Blogspot.com have assigned to others.

    B.    Plaintiff's request to take the deposition of an unidentified individual currently residing in Ohio is **DENIED**.

    C.    Plaintiff shall file a third-party discovery status report with this court on or before **Monday, June 13, 2011** to report on the status of this limited discovery.

    D.    Plaintiff's motion to extend time to effect service of process and to serve the amended complaint by alternative means (#13) is **GRANTED**. Plaintiff shall have to and including **Wednesday, July 20, 2011** to properly effectuate service. Alternative methods of service of process will be allowed, should such alternative means be necessary and if available in accordance with the law of the State of South Carolina (or wherever Mr. Hicks is next found) for effective service of process. Fed.R.Civ.P. 4(e)(1).

**IT IS SO ORDERED.**

DATED: April 27, 2011.

_____
UNITED STATES MAGISTRATE JUDGE